# IN THE COURT OF APPEALS OF IOWA

No. 24-1700
Filed January 23, 2025

**IN THE INTEREST OF M.M. and M.M.,**
**Minor Children,**

**K.M., Mother,**
    **Appellant.**
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, Judge.

A mother appeals the juvenile court's entry of a bridge modification order and its order finding reasonable efforts for reunification were made. **AFFIRMED.**

Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Grishma Arumugam of GPA Legal LLC, Davenport, attorney and guardian ad litem for minor children.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**AHLERS, Judge.**

This is an appeal in child-in-need-of-assistance (CINA) proceedings involving two children—born in 2009 and 2017. The children's parents divorced in 2021. Their divorce decree gave them joint legal custody and joint physical care of the children.

In 2023, the juvenile court adjudicated the children as CINA, removed them from the mother's custody, and placed them in the father's custody and care after the mother possessed methamphetamine and refused to voluntarily participate in services offered by the Iowa Department of Health and Human Services. After more than a year of services without any notable progress by the mother, the juvenile court ended the CINA proceedings by entering a bridge modification order in district court granting the father legal custody and physical care of the children subject to the mother's visitation, which would be at the father's discretion. *See* Iowa Code § 232.103B(1) (2024) (permitting the juvenile court to close a CINA case by returning jurisdiction to the district court via an order "modifying issues of legal custody, physical care, and parenting time" when specified conditions are met). The juvenile court also denied the mother's motion for reasonable efforts, which asked for additional visitation and family counseling. The mother appeals both the terms of the bridge modification order and the order denying her request for reasonable efforts.

## I.    Standard of Review

We review CINA proceedings de novo and, in doing so, give weight to the juvenile court's fact findings even though we are not bound by them. *In re D.D.*,

955 N.W.2d 186, 192 (Iowa 2021). Our primary concern is the children's best interests. *Id.*

## II.      Reasonable Efforts

We start our review by addressing the mother's challenge to the court's reasonable-efforts ruling. In this case's context, reasonable efforts are "the efforts made to . . . eliminate the need for removal of the child[ren] or make it possible for the child[ren] to safely return to the [mother]'s home." Iowa Code § 232.102A(1)(a). The reasonable-efforts mandate requires the department to make every reasonable effort to return children to their home as soon as possible consistent with the children's best interests. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). This mandate focuses on services to improve parenting, which includes visitation. *Id.* But, in assessing compliance with this mandate, we look to the services provided and the parent's response, not necessarily to the services a parent claims the department failed to provide. *Id.* at 494.

Here, the mother's primary complaint is that the older child refused to attend any visits, and her visits with the younger child were reduced from four hours per week to two hours per week of supervised time. At first blush, this limited amount of visitation gives us some pause. But, as in all cases involving a reasonable-efforts challenge, we assess the department's actions based on the particular circumstances of the case. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa 2000). Those circumstances include the fact that the mother has mental-health and substance-use issues, which she has refused to meaningfully address. When she exercised her limited visits, she had to be reminded repeatedly to interact with the child rather than sitting idly by while the child watched videos. She also refused to

submit to even one of the numerous drug tests demanded by the department. Also, despite the services offered to her, the mother steadfastly denied the detrimental effects her drug use had on the children and her ability to parent them. And, importantly, the children's counselor did not recommend forcing the older child to attend visits or changing the visitation schedule with the younger child. Upon consideration of all these circumstances, we agree with the juvenile court's determination that the department made reasonable efforts toward reunification.

### III.    Bridge Modification Order

We turn next to the mother's challenge to the terms of the bridge modification order. We start by noting that the juvenile court's authority to modify an existing district court custody order as a means of closing a CINA case—as opposed to issuing an initial order addressing custody-related issues—was granted by our legislature in 2023. *See* 2023 Iowa Acts ch. 132, § 1 (codified at Iowa Code § 232.103B). Iowa Code section 232.103B permits the juvenile court to close a CINA case by modifying an existing district court order on the issues of custody, physical care, and visitation by entry of a bridge modification order. Before the juvenile court is permitted to enter such an order, five statutory conditions must be met. *See* Iowa Code § 232.103B(1)(a)–(f). The mother does not contend that any of the statutory conditions were not met. Instead, she argues only that the terms of the order were erroneous. So, we limit our review accordingly.[1] *See In re B.C.*, No. 24-1069, 2024 WL 4620164, at *2 (Iowa Ct. App.

---

[1] As the mother does not challenge the visitation provisions of the bridge modification order, we confine our discussion to the legal-custody and physical-care provisions.

Oct. 30, 2024) (declining to address the statutory conditions for entry of a bridge order when no challenge is made to those conditions).[2]

The mother contends the terms of the bridge modification order that changed the parents' legal relationships with the children from joint legal custody and joint physical care to the father having legal custody and physical care are not in the children's best interests. The factors to consider in determining custody and physical care are well-known and spelled out in *In re Marriage of Winter*. 223 N.W.2d 165, 166–67 (Iowa 1974); *see also In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007) (noting that the factors for determining custody set forth in Iowa Code section 598.41(3) and *In re Marriage of Winter* also apply to physical-care determinations). The children's best interests are the overriding consideration when assessing the factors. *Fennelly*, 737 N.W.2d at 101.

Following our de novo review, we agree with the juvenile court's decision to grant the father legal custody and physical care of the children. The mother failed to appear at the hearing on the father's motion asking for entry of the bridge modification order, and she presented scant evidence in opposition to the motion. So, the evidence in support of the father's request was largely unrebutted. That evidence included the details outlined above regarding the mother's issues, including her failure to adequately address her substance-use and mental-health issues and her inability to recognize the detrimental effects her methamphetamine

---

[2] Section 232.103B is a relatively new statute, and we have found no cases addressing it. Because section 232.103B is structured like and patterned after section 232.103A—which gives the juvenile court authority to close a CINA case by entering a bridge order that sets custody, physical care, and visitation in the absence of an existing district court order doing so—we consider cases interpreting section 232.103A instructive.

use has on the children and her ability to parent them. *See* Iowa Code § 598.41(3)(a) (listing as a factor in a custody determination "[w]hether each parent would be a suitable custodian for the child"), (i) (listing as a factor "[w]hether the safety of the child[ren] . . . will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation").

The evidence also establishes that changing the custodial arrangement that was in place during the CINA proceedings—under which the father had custody and physical care—would be psychologically and emotionally harmful to the children. *See id.* § 598.41(3)(b) (listing as a factor in custody determinations "[w]hether the psychological and emotional needs and development of the child[ren] will suffer due to lack of active contact with and attention from both parents"). In contrast to the instability demonstrated by the mother, the evidence establishes that the father has provided a stable and safe home for the children where they are doing well in school, in extracurricular activities, and in general. *See id.* § 598.41(3)(a). And finally, the older child—who was on the verge of turning fifteen at the time of the hearing—expressed a preference for being in her father's custody and care and strong opposition to being placed back in her mother's custody and care. *See id.* § 598.41(3)(f) (listing as a factor "[w]hether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity").

After taking into consideration all relevant circumstances on our de novo review, we agree with the juvenile court that the CINA proceedings could safely close by entry of a bridge modification order. The only impediment to closure of the CINA proceedings is the mother's instability. The negative impact of that

instability was curbed by the terms of the bridge modification order giving the father legal custody and physical care of the children. As a result, we also agree that it is in the children's best interests to give the father legal custody and physical care of the children.

**IV.     Conclusion**

Having rejected the mother's reasonable-efforts challenge and her challenge to the legal-custody and physical-care terms of the bridge modification order, we affirm.

**AFFIRMED.**